Valentino GRIFFITH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0806–CR–482.

Court of Appeals of Indiana.

Dec. 23, 2008.

Karen Celestino–Horseman, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BROWN, Judge.

Valentino Griffith appeals his convictions for criminal recklessness as a class D felony,[1] intimidation as a class D felony,[2] and battery as a class A misdemeanor.[3] Griffith raises two issues, which we revise and restate as:

I.  Whether the trial court erred by permitting Brenda Fuller to testify without having been sworn to tell the truth;

II.  Whether the trial court abused its discretion by excluding Griffith's alleged hearsay statements; and

III.  Whether the evidence is sufficient to sustain Griffith's convictions.

We affirm.

The relevant facts follow. Griffith and Brenda Fuller were neighbors in a duplex at 646 Division Street. On September 9, 2007, Griffith and Fuller were arguing in her car at 646 Division Street. Fuller stepped out of her car and asked Griffith not to slam the door. Griffith got out of the car, walked up to Fuller, pushed her against the car, and told her to leave. Fuller told Griffith that she did not have to leave, and Griffith started pushing her more. Griffith then pulled out a gun, pointed it at Fuller's head and "jammed" it into her ribs, and told her that he was going to shoot her if she did not leave. Transcript at 18. When Griffith pointed the gun at Fuller, Griffith's nephew, Darnell Williams, stepped in between Griffith and Fuller as Griffith was pushing Fuller. At one point, Griffith grabbed Fuller's left breast and "twisted it," which was "very painful," and Fuller screamed. *Id.* at 12–13. Williams pushed Griffith away, and Fuller was able to get in her car and drive away.

The State charged Griffith with Count I, criminal recklessness as a class D felony, Count II, intimidation as a class D felony, and Count III, battery as a class A misdemeanor. At the bench trial, the prosecutor called Fuller as a witness. The following exchange then occurred:

THE COURT: ... Miss Fuller, why don't you come on up here to the witness stand. And before you sit down, if you would raise your right hand. Do you solemnly swear, or affirm, under penalty of perjury, the testimony you are about to give is the truth, the whole truth, and nothing but the truth?

MS. B. FULLER: So.

THE COURT: Okay. Please have a seat, ma'am.

1.  Ind.Code § 35–42–2–2 (Supp.2006).

2.  Ind.Code § 35–45–2–1 (Supp.2006).

3.  Ind.Code § 35–42–2–1 (Supp.2007).

*Id.* at 5–6. Griffith did not object to this exchange, and the prosecutor and Griffith's attorney examined Fuller.

Later, during the direct examination of Griffith, he testified that he wanted to lease both apartments in the duplex and that he "needed somebody to put their name on the lease, and [Fuller] said if I pay her, she'll do it, and she never did." *Id.* at 65. Griffith's attorney asked Griffith why Fuller came to see him, and Griffith began to testify regarding what his brother-in-law said. The prosecutor objected on the basis of hearsay, and the trial court sustained the objection. Griffith later testified that Fuller "lost her job and she needed money and she knew that I had money, and she said that if [sic] I give her $2,000 or else." *Id.* at 69. The prosecutor objected on the basis of hearsay, and the trial court sustained the objection.

The trial court found Griffith guilty as charged and sentenced him to 545 days with 365 days suspended for Count I, criminal recklessness as a class D felony, 545 days with 365 days suspended for Count II, intimidation as a class D felony, and 365 days with 365 days suspended for Count III, battery as a class A misdemeanor. The trial court ordered that the sentences be served concurrently.

## I.

■ The first issue is whether the trial court erred by permitting Fuller to testify without having been sworn to tell the truth. Griffith appears to argue that Fuller's testimony lacks probative value because Fuller did not swear or affirm that she would tell the truth. Griffith is referring to Fuller's response of "So" to the trial court's question: "Do you solemnly swear, or affirm, under penalty of perjury,

the testimony you are about to give is the truth, the whole truth, and nothing but the truth?" Transcript at 5–6. Griffith did not object to Fuller's response, and the prosecutor examined Fuller.

Ind. Evidence Rule 603 governs the oath or affirmation and provides:

> Before testifying, every witness shall swear or affirm to testify to the truth, the whole truth, and nothing but the truth. The mode of administering an oath or affirmation shall be such as is most consistent with, and binding upon the conscience of the person to whom the oath is administered.

This rule "embodies a pre-existing Indiana statute," Ind.Code § 34–45–1–2. 13 MILLER, INDIANA PRACTICE § 603.101 at 70 (2007). Ind.Code § 34–45–1–2 provides that "[b]efore testifying, every witness shall be sworn to testify the truth, the whole truth, and nothing but the truth. The mode of administering an oath must be the most consistent with and binding upon the conscience of the person to whom the oath may be administered."

Indiana courts have held that the statutory requirement that testimony be given under oath or affirmation may be waived by failing to object. *See Sweet v. State,* 498 N.E.2d 924, 926 (Ind.1986) (holding that the statutory requirement under Ind. Code § 34–1–14–2[4] that every witness be sworn to testify the truth, the whole truth, and nothing but the truth can be waived by the parties if no objection is made and holding that appellate review was foreclosed because there was no objection), *superseded on other grounds by Ind.* Evidence Rule 404; *Pooley v. State,* 116 Ind.App. 199, 202–203, 62 N.E.2d 484, 485 (1945) (holding that the statutory requirement that every witness shall be sworn can be waived by the parties and if no objection is

---

4. Ind.Code § 34–1–14–2 was repealed by Pub.L. No. 1–1998, § 221.

made to a witness testifying without being so sworn such waiver will be presumed), *reh'g denied.* To the extent that Griffith challenges Fuller's testimony on the basis that she was not properly sworn, we conclude that Griffith waived this issue, and we will consider Fuller's testimony. *See Sweet,* 498 N.E.2d at 926; *Pooley v. State,* 116 Ind.App. at 202–203, 62 N.E.2d at 485.

## II.

■ The next issue is whether the trial court abused its discretion by excluding Griffith's testimony regarding the alleged hearsay statements. The trial court has broad discretion in ruling on the admission or exclusion of evidence. *Sallee v. State,* 785 N.E.2d 645, 650 (Ind.Ct.App.2003), *trans. denied, cert. denied,* 540 U.S. 990, 124 S.Ct. 480, 157 L.Ed.2d 385 (2003). A trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Platt v. State,* 589 N.E.2d 222, 229 (Ind. 1992). "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked." Ind. Evidence Rule 103.

Griffith points to the following exchange that occurred during the direct examination of Griffith:

Q   Okay. How did it come about that—that Miss Fuller came to see you or came to speak with you?

A   Um, my brother-in-law knew—knew her number—I didn't—and he called her. He—he said that she—

[Prosecutor]:   Objection, Your Honor. Hearsay.

Transcript at 66. The trial court sustained the objection. After discussion, Griffith's counsel proceeded with Griffith's direct examination as follows:

Q   Um, am I go [sic] gather that at some point you came to understand that you might be able to work out a—a—a rental agreement or some sort; is that what you're getting at?

A   A payment arrangement for her to sign a lease.

Q   Okay. And so did you contact her?

A   Um, she came around.

Q   Okay. And did you guys work something out?

A   Um, it was agreed that she would, but it never happened.

Q   Okay. How is it that she came to get into an argument with you as she's alleging?

A   Um, basically, she lost her job and she needed money and she knew that I had money, and she said that if I give her $2,000 or else.

[Prosecutor]:   Again, Your Honor, I'm gonna object to this being hearsay and also relevance.

THE COURT: Okay.

[Griffith's Attorney]: It's absolutely relevant to motive.

THE COURT: It's hearsay though, so it's sustained.

\*      \*      \*      \*      \*      \*

[Griffith's Attorney]: Okay. And if I just make for the record, um, State that we are not offering any statements made by Miss Fuller for the truth of the matter asserted in the statements. In fact, we would say that the de— from the defense's point of view, we wouldn't believe what—what she had

to say and that's why it—it's only going to be—

\*   \*   \*   \*   \*   \*

[Griffith's Attorney]: ... It's just to—to—it goes to the effect on the listener and how things unfolded. That's it. Transcript at 69–71.

On appeal, Griffith argues that "[t]he trial court erred when it declined to allow the testimony of Griffith regarding the real reason why Fuller was at the Division address." Appellant's Brief at 14. Griffith also argues that "[f]rom the record, it appears that Griffith was attempting to testify that Fuller apparently made kind of [an] attempt to extort money from him," and "[s]uch words would have had an impact upon Griffith and would have shown the reason Fuller was on the property was not because she lived at the Division address." *Id.* at 16.

■ Based on the record, we cannot say that Griffith made an offer of proof in accordance with Ind. Evidence Rule 103. "An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony and the potential for prejudice if it is excluded." *Dowdell v. State,* 720 N.E.2d 1146, 1150 (Ind.1999). "It is well settled that an offer of proof is required to preserve an error in the exclusion of a witness' testimony." *Id.* However, Indiana Evidence Rule 103(a)(2) does not require an offer of proof if the substance of the evidence "was apparent from the context within which questions were asked." Here, to the extent that Griffith argues that "it appears that Griffith was attempting to testify that Fuller apparently made kind of [an] attempt to extort money from him," we cannot say that the exclusion of this testimony affected his substantial rights because Griffith did not argue that he was acting under sudden heat or in self defense. *Cf. Sylvester v.*

*State,* 698 N.E.2d 1126, 1129 (Ind.1998) (holding that the defendant wanted to introduce statements in order to show the circumstances which led to his sudden heat), *reh'g denied.*

### III.

The next issue is whether the evidence is sufficient to sustain Griffith's convictions. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

### A. *Criminal Recklessness*

■ The offense of criminal recklessness as a class D felony is governed by Ind.Code § 35–42–2–2, which provides that "[a] person who recklessly, knowingly, or intentionally performs ... an act that creates a substantial risk of bodily injury to another person ... commits criminal recklessness.... The offense of criminal recklessness ... is ... a Class D felony if ... it is committed while armed with a deadly weapon...." The State alleged that Griffith "did recklessly, knowingly or intentionally perform an act that created a substantial risk of bodily injury to Brenda Fuller said act being described as forcing a firearm into her ribcage, and further that

when the defendant committed said act the defendant was armed with a deadly weapon, to-wit: a semi-automatic handgun." Appellant's Appendix at 19. Thus, the State was required to prove beyond a reasonable doubt that Griffith recklessly, knowingly, or intentionally forced a firearm into Fuller's ribcage, which was an act that creates a substantial risk of bodily injury to another person, while he was armed with a deadly weapon.

Griffith argues that "Fuller never testified that Griffith put a gun to her ribcage." Appellant's Brief at 14. However, the following exchange occurred during the direct examination of Fuller:

Q Okay. And when he had the gun, did he ever place it on your body?

A He did put it towards my head and he did put it in my ribs and jammed it in my ribs.

Transcript at 18. Based upon our review of the record, we conclude that evidence of probative value exists from which the trial court could have found that Griffith committed criminal recklessness as a class D felony. *See, e.g., Al–Saud v. State,* 658 N.E.2d 907, 910 (Ind.1995) (holding that the evidence was sufficient to support a conviction of criminal recklessness).

B. *Intimidation*

■ The offense of intimidation as a class D felony is governed by Ind.Code § 35–45–2–1, which provides that "[a] person who communicates a threat to another person, with the intent ... that the other person be placed in fear of retaliation for a prior lawful act ... commits intimidation, a Class A misdemeanor. . . . However, the offense is a ... Class D felony if ... the threat is to commit a forcible felony." The State charged that Griffith "did communicate a threat to Brenda Fuller, another person, said threat being: to shoot and/or kill Ms. Fuller, with the intent that the

other person be placed in fear of retaliation for a prior lawful act, to wit: being at her residence, and further that said threat was to commit forcible felony, to wit: murder." Appellant's Appendix at 20. Thus, the State was required to prove beyond a reasonable doubt that Griffith communicated a threat to commit a forcible felony to Fuller with the intent to place Fuller in fear of retaliation for a prior lawful act, being at her residence.

Griffith argues that there was no evidence of a prior lawful act by Fuller because Fuller did not live at 646 Division Street. Specifically, Fuller argues that because Fuller's testimony "was contradicted by Tieken, the property manager, who testified under oath that Fuller was not a lawful resident of the Division address, the trial court erred when it found Griffith guilty of intimidation." Appellant's Brief at 11.

Griffith points to the testimony of Daniel Tieken, the manager of the property at 646 Division Street, in which Tieken testified that Fuller did not pay any rent to him in 2007, that Griffith signed both leases at 646 Division Street, and that Fuller did not have a lease agreement in September 2007. Tieken later testified that Griffith rented the bottom apartment for Fuller. The following exchange occurred during the cross examination of Fuller:

Q And how did you come to live [at 646 Division Street] again?

A I needed a place to live because my sister's place got condemned.

Q So who did you contact?

A I contacted Dan because I knew he had the bottom apartment open.

Q And did you, in fact, rent the apartment from him?

A Um, yeah.

Q And did you sign a lease?

A  Yeah. I just never received the paper.

Q  And you paid your rent directly to him?

A  Yeah, I gave him two money orders for $450.

Q  Directly to Dan?

A  Directly to Dan.

Q  Okay. And you signed a lease with Dan also, correct?

A  Yes, I signed the lease with Dan.

Q  Okay. And this is on the most recent time that you lived there?

A  Yes.

Transcript at 20–21.

Conflicting evidence was presented on this issue, and Griffith's argument is merely an invitation to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Drane,* 867 N.E.2d at 146. Based upon our review of the record, we conclude that evidence of probative value exists from which the trial court could have found that Fuller committed the prior lawful act of being at her residence and that Griffith committed intimidation as a class D felony. *See, e.g., Jones v. State,* 775 N.E.2d 322, 330 (Ind. Ct.App.2002) (holding that the evidence was sufficient to sustain defendant's conviction for intimidation).

## C.  Battery

▮ The offense of battery as a class A misdemeanor is governed by Ind.Code § 35–42–2–1, which provides that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is ... a Class A misdemeanor if ... it results in bodily injury to any other person...." Thus, the State was required to prove beyond a reasonable doubt that Griffith knowingly or intentionally touched Fuller in a rude, insolent, or angry manner and that such contact resulted in bodily injury to Fuller.

Griffith argues that he did not touch Fuller in any manner. Griffith also argues that neither of the investigating officers saw the bruise or made arrangements for a female officer to view the bruise. Griffith also argues that Williams testified that the bruise was above Fuller's breast but "[i]f Griffith had twisted Fuller's breast as she claimed, then the burise [sic] should have been in the area around her nipple, as she represented to police, and not the area above her breast." Appellant's Brief at 13.

The record reveals that Fuller testified that Griffith pushed her against her car and at one point grabbed her left breast and "twisted it," which was "very painful." Transcript at 12–13. The following exchange occurred during the direct examination of Williams:

Q  Did you ever see him place his hands on her?

A  Yes, I did.

Q  And what did you see?

A  Well, when he placed his hands on her, he was pushin' her against her driver's side door, and that's when she got a bruise right here on her left—on her left breast from when his—his hand and the—a gun that he was holdin' that day—when he was pushin' her against the car it must have, um—

[Griffith's Attorney]: Object to speculation. Ask that he testify just as to what he saw.

Q  Okay. If you can just testify to what you saw and not—

A  Oh, okay.

Q  —what you think happened—

A  Oh,—

Q —or anything.

A —well, I did see the—I did see him with the gun in his hand when he was pushin' her.

\* \* \* \* \* \*

Q Uh, did you see the injuries to Brenda?

A Yes, I did.

Q And can you describe that?

A It was a black and blue right here above her—her left breast. It was a—probably about the size of my palm, actually, how big the—the bruise was.

*Id.* at 29–30. Based upon our review of the record, we conclude that evidence of probative value exists from which the trial court could have found that Griffith committed battery as a class A misdemeanor. *See, e.g., Cooper v. State,* 831 N.E.2d 1247, 1251 (Ind.Ct.App.2005) (holding that the evidence was sufficient to support a conviction of battery), *reh'g denied, trans. denied.*

For the foregoing reasons, we affirm Griffith's convictions for criminal recklessness as a class D felony, intimidation as a class D felony, and battery as a class A misdemeanor.

Affirmed.

ROBB, J. and CRONE, J. concur.