**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 23 2012, 8:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALAN DWAYNE GRAY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1110-CR-517 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
The Honorable Kathleen A. Sullivan, Magistrate
Cause No. 45G04-1105-FD-98

**April 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Alan Dwayne Gray appeals his convictions for criminal recklessness as a class D felony[1] and intimidation as a class D felony.[2] Gray raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm.

The facts most favorable to Gray's convictions follow. On May 1, 2011, Velsheena Bryant walked to the house of her neighbor Robert Dove because he was having a barbeque. A red van with tinted windows pulled up near Dove's house. There were eight women in the van, including Lakesha Gray and her daughters Arianna Gray and Essence Gray. Lakesha was in a relationship with Dove and was also married to Dino, who is Gray's nephew. Eventually, an altercation occurred between Dove and Lakesha and her daughters. Velsheena began to walk home, and one of Lakesha's daughters said "[w]hat that 'B' gonna do." Transcript at 41. Lakesha, Arianna, and Essence "started jumping on" Velsheena, and Lakesha hit her. Id. Velsheena went to her house and called the police, and the police arrested Lakesha, Arianna, and Essence.

On May 7, 2011, Velsheena was at home and heard someone say "come outside, come outside" but did not see anyone. Id. at 43. Dove then called Velsheena's house "saying that they just kicked in his door and . . . then he said that they was gonna come kick in [Velsheena's] door next because of the altercation that happened the week before that." Id.

Later that day, Cynthia Bryant, who was Velsheena's mother, called her other daughter, Quetillya Bryant, for a ride to a gas station. Quetillya picked up Cynthia, drove

---

[1] Ind. Code § 35-42-2-2 (Supp. 2006)

[2] Ind. Code § 35-45-2-1 (Supp. 2006).

2

to the Gary Food Mart, and parked next to gas pump number three. Cynthia went inside the gas station, and Quetillya remained in her vehicle. Inside the store, Gray approached Cynthia, and Cynthia observed that Gray was intoxicated. Gray stated "I want to know what's going on, because the girl that you had sent to jail was my niece." Id. at 115. Cynthia attempted to explain to Gray that his niece had "jumped on my daughter for nothing and she's pregnant" but "it was like [Gray] wasn't trying to hear nothing [she] was saying to him" and "was trying to stir something up." Id. at 116-117. Gray pointed to other people in the store and asked Cynthia "Who is that," but Cynthia did not know any of the people. Id. at 117. Cynthia and Gray exited the gas station, and Gray pointed to Quetillya and stated "Who is she," and Cynthia stated that Quetillya "don't have nothin' to do with it, she don't [k]now nothin' about nothing, and she is just here with [Cynthia]." Id. Quetillya heard Gray state that "it was his nephew, Dino, that kicked down that N-----'s door," referring to Dove's house. Id. at 65-66.

Quetillya opened the door of her vehicle about half way because a pole prevented her from opening it further and put one leg out. As Quetillya opened her car door and stood, Gray "got loud" and stated: "B----, I got a trick for you. I got a trick for you." Id. at 66. Gray then "went for the nozzle," held the gas nozzle "like he's holding a gun," pointed it at Quetillya, and sprayed gasoline toward Quetillya. Id. at 69, 73. The gasoline sprayed on the windshield and driver's side window of Quetillya's vehicle, on the inside seat of her vehicle, and on Quetillya's jacket. Gray had a cigarette in his hand and stated: "B----, I'll set you on fire." Id. at 121. Cynthia and the owner of the gas station attempted to wrestle the nozzle away from Gray. Cynthia stated "Come on, . . .

3

Gray, we're better than that, that's my daughter," and Gray told Cynthia "You got a disrespectful ass daughter." Id. at 74-75. One of Gray's family members pulled into the gas station, placed Gray in his vehicle, and left.

Later in the afternoon, police officers approached Gray and three other men standing in the street, and the men told the officers that "[t]he man you're looking for is already on the highway going back to Indianapolis." Id. at 52. Quetillya identified Gray as the man who discharged gasoline on her, and Gray was arrested.

In an amended information filed on June 6, 2011, the State charged Gray with: Count I, criminal recklessness as a class D felony; Count II, intimidation as a class D felony; Count III, criminal mischief as a class B misdemeanor; and Count IV, battery as a class B misdemeanor. At trial, the jury heard the testimony of, among others, Velsheena, Quetillya, Cynthia, and several law enforcement officers. The jury found Gray guilty on all counts, and the court vacated judgment in Counts III and IV as lesser included offenses of Count I. The court sentenced Gray to two years on each count and ordered the sentences to be served concurrently.

The issue is whether the evidence is sufficient to sustain Gray's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. "It is well-established that 'the uncorroborated testimony

4

of one witness may be sufficient by itself to sustain a conviction on appeal.'" Scott v. State, 871 N.E.2d 341, 343 (Ind. Ct. App. 2007) (quoting Toney v. State, 715 N.E.2d 367, 369 (Ind. 1999)), trans. denied.

A.    Criminal Recklessness Conviction

The offense of criminal recklessness as a class D felony is governed by Ind. Code § 35-42-2-2, which provides in part that "[a] person who recklessly, knowingly, or intentionally performs . . . an act that creates a substantial risk of bodily injury to another person . . . commits criminal recklessness" and "the offense . . . is . . . a Class D felony if . . . it is committed while armed with a deadly weapon . . . ." According to Ind. Code § 35-41-2-2, a person "engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so;" a person "engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so;" and a person "engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

We also note that because intent is a mental function, it must be determined from a consideration of the defendant's conduct and the natural and usual consequences of such conduct, absent an admission from the defendant. Hendrix v. State, 615 N.E.2d 483, 484-485 (Ind. Ct. App. 1993) (citing Metzler v. State, 540 N.E.2d 606, 609 (Ind. 1989)). To determine whether the defendant intended to commit the conduct, the trier of fact must usually resort to reasonable inferences based upon an examination of the surrounding circumstances. Id.

Gray's sole argument is that he did not act with the intent necessary to convict him of criminal recklessness. Gray argues that he "reached out with at [sic] gas nozzle and Quetillya's mother and the gas station owner also grabbed the nozzle and a scuffle ensued" and that "[s]ome gas came out onto Quetillya's car and jacket. However, the State failed to prove that Gray recklessly, knowingly or intentionally sprayed it on Quetillya." Appellant's Brief at 8.

The State argues that the evidence demonstrates that Gray's conscious objective was to cover Quetillya in gasoline, that his comment of "hav[ing] a trick for" Quetillya indicates that he intended to cause her harm, and that Gray's holding the nozzle as if it were a gun further demonstrates Gray's objective. The State further argues that Gray was aware of the high probability that he was spraying gas on Quetillya, that the amount of gas sprayed demonstrates that Gray did not accidentally engage the gas pump, and that Cynthia and the owner of the gas station would not have physically engaged Gray if he was merely standing with the nozzle in his hand. The State also argues that Gray's action of spraying gasoline placed Quetillya and everyone at the gas station in danger and that Gray substantially deviated from acceptable standards of conduct at the gas station.

The record reveals that, inside the gas station, Gray stated to Cynthia: "I want to know what's going on, because the girl that you had sent to jail was my niece." Transcript at 115. Cynthia testified that she attempted to explain to Gray that his niece had "jumped on my daughter for nothing and she's pregnant" but that "it was like [Gray] wasn't trying to hear nothing I was saying to him" and "was trying to stir something up." Id. at 116-117. After Gray and Cynthia exited the gas station, Quetillya heard them

6

arguing and heard Gray state that "it was his nephew, Dino, that kicked down that N-----'s door." Id. at 65-66. Gray and Quetillya were arguing and yelling at each other.

As Quetillya opened her car door and stood, Gray "got loud" and stated "B----, I got a trick for you." Id. at 66. Gray "went for the nozzle," held the gas nozzle "like he's holding a gun," pointed it at Quetillya, and sprayed gasoline toward her. Id. at 69, 73. He had a cigarette in his hand and stated "B----, I'll set you on fire." Id. at 121. The gasoline sprayed on the windshield and driver's side window of Quetillya's vehicle, on the inside seat of her vehicle, and on her jacket. Cynthia and the owner of the gas station attempted to wrestle the nozzle away from Gray. Cynthia stated "Come on, . . . Gray, we're better than that, that's my daughter," and Gray told Cynthia "You got a disrespectful ass daughter." Id. at 74-75.

Based upon our review of the record, we conclude that evidence of probative value exists from which the jury could have found that Gray possessed the requisite intent and did commit criminal recklessness as a class D felony. See Al-Saud v. State, 658 N.E.2d 907, 910 (Ind. 1995) (holding that the evidence was sufficient to support a conviction of criminal recklessness); Griffith v. State, 898 N.E.2d 412, 416-417 (Ind. Ct. App. 2008) (concluding that evidence of probative value existed from which the trier of fact could have found that the defendant committed criminal recklessness as a class D felony).

B.    Intimidation Conviction

The offense of intimidation is governed by Ind. Code § 35-45-2-1, which provides in part that "[a] person who communicates a threat to another person, with the intent . . . that the other person be placed in fear of retaliation for a prior lawful act . . . commits

7

intimidation, a Class A misdemeanor," and the "offense is a . . . Class D felony if . . . the threat is to commit a forcible felony." Ind. Code § 35-45-2-1. A "threat" is "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened or another person, or damage property; [or] commit a crime . . . ." Ind. Code § 35-45-2-1(c). Ind. Code § 35-41-1-11 defines forcible felony as a "felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." As previously noted, intent is generally determined from a consideration of the defendant's conduct and the natural and usual consequences of such conduct and the trier of fact must usually resort to reasonable inferences based upon an examination of the surrounding circumstances. See Hendrix, 615 N.E.2d at 484-485.

Gray's sole argument is that the evidence is insufficient to affirm his conviction for intimidation because Quetillya testified at trial that she was not in fact intimidated by Gray. Gray argues "[b]y her own words, Quetillya admitted that [] Gray did not intimidate her" and that "[s]he was holding her own in their fight." Appellant's Brief at 9. The State argues that Gray communicated threats to Quetillya, that Ind. Code § 35-45-2-1 does not require Quetillya to be intimidated by Gray's threat or even placed in fear by Gray, and that only Gray's intent is relevant.

Gray does not point to authority for the proposition that a defendant does not commit the offense of intimidation if the threat communicated by the defendant to another person does not result in the other person feeling fearful or intimidated. Ind. Code § 35-45-2-1 requires the State to show that the defendant "communicate[d] a threat

8

to another person, *with the intent* . . . that the other person be placed in fear . . . ," and the State alleged in its amended charging information that Gray knowingly or intentionally communicated a threat to Quetillya "*with the intent* that [she] be placed in fear of retaliation . . . ." <u>See</u> Appellant's Appendix at 16 (emphasis added).

Based upon our review of the record, we conclude that evidence of probative value exists from which the jury could reasonably have found beyond a reasonable doubt that Gray committed intimidation as a class D felony. <u>See</u> <u>Griffith</u>, 898 N.E.2d at 417-418 (holding the evidence was sufficient for the court to have found that the defendant committed intimidation as a class D felony).

For the foregoing reasons, we affirm Gray's convictions for criminal recklessness and intimidation as class D felonies.

Affirmed.

BAKER, J., and KIRSCH, J., concur.